IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHARLES THOMAS MONROE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 09-1004-SLR |
| | ) |
| PERRY PHELPS, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM ORDER**

At Wilmington this ___ day of April, 2010, having screened the case pursuant to 28 U.S.C. § 1915 and § 1915A;

IT IS ORDERED that plaintiff's motions are denied (D.I. 4, 10, 15, 16); that the claims against defendant Perry Phelps are dismissed as frivolous pursuant to 28 U.S.C. § 1915 and § 1915A; and that plaintiff may proceed against defendants Michael Bryan and Raymond Hannum, for the reasons that follow:

1. **Background.** Plaintiff Charles Thomas Monroe ("plaintiff"), a prisoner incarcerated at the James T. Vaughn Correctional Center, Smyrna, Delaware, filed a complaint pursuant to 42 U.S.C. § 1983.[1] Also pending before the court is a request for counsel, motion for injunctive relief, and two letter/motions which the court construes as motions for transfer to the Howard R. Young Correctional Institution, Wilmington, Delaware. (D.I. 4, 10, 15, 16)

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

-
-
-

2. **Standard of Review.** This court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a pro se plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because plaintiff proceeds pro se, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

3. An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); see, e.g., *Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

4. The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used

when ruling on 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999)(applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the court must grant plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

5. A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, –U.S.–, 129 S.Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Id.* at 1949. When determining whether dismissal is appropriate, the court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim are separated. *Id.* The court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* at 210-11. Second, the court must determine whether the facts alleged in the complaint are sufficient to show that plaintiff has a "plausible claim for relief."[2] *Id.* at 211. In other words, the complaint must do more than allege plaintiff's entitlement to relief; rather it must "show" such an

---

[2]A claim is facially plausible when its factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*

entitlement with its facts. *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1949 (quoting Fed. R. Civ. P. 8(a)(2)).

6. **Discussion**. Plaintiff received several disciplinary reports in 2008 and 2009, was found guilty of the infractions, and disciplined. Plaintiff was housed in the security housing unit ("SHU") from March 27, 2008 until April 6, 2009. As discussed below, he had sustained a back and neck injury on January 7, 2008, and alleges that placement in SHU aggravated his injuries but defendant Perry Phelps ("Phelps") failed to intervene. He further alleges that Phelps allowed a pattern and practice of procedural due process rights violations during disciplinary hearings held on February 29, April 8, and July 22, 2008, and on April 6 and October 22, 2009. Plaintiff's appeals to Phelps were denied. (D.I. 2, ¶ IV.1)

7. Plaintiff also alleges that defendant Sgt. Michael Bryan ("Bryan") used excessive force on January 7, 2008 and, as a result, plaintiff sustained back and neck injuries in violation of the Eighth Amendment of the United States Constitution. Plaintiff further alleges that Bryan retaliated by filing fabricated disciplinary reports after plaintiff indicated that he intended to seeking legal recourse for the assault. (*Id.* at ¶ IV.2) Plaintiff's final claim is raised against defendant Raymond Hannum ("Hannum") He alleges that Hannum also retaliated after being informed that plaintiff intended to name him as a conspirator of Bryan.[3] (*Id.* at ¶ IV.3)

---

[3]Liberally construing the complaint as the court must, the allegations against Bryan and Hannum, appear to allege non-frivolous and cognizable excessive force and

8. **Personal Involvement/Respondeat Superior.** The complaint alleges that Phelps failed to take corrective action after being informed of alleged constitutional violations. As is well established, supervisory liability cannot be imposed under § 1983 on a respondeat superior theory.[4] See *Iqbal*,129 S.Ct. 1937; *Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). "'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'" *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). Purpose rather than knowledge is required to impose liability on an official charged with violations arising from his or her superintendent responsibilities.[5] *Iqbal*, 129 S.Ct. at 1949. "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.*

---

retaliation claims.

[4] In *Iqbal*, the plaintiff alleged supervisory officials violated his rights because one official was the "principal architect" of the policy, and another was "implemental" in adoption and execution of the policy. See *id.* at 1944. The Supreme Court found the allegations facially insufficient. See *Iqbal*, 129 S.Ct. at 1949 (quoting *Robertson v. Sichel*, 127 U.S. 507, 515-516 (1888), for the proposition that "[a] public officer or agent is not responsible for the misfeasances or [] wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties").

[5] In light of *Iqbal*, it is uncertain whether proof of personal knowledge, with nothing more, provides a sufficient basis to impose liability upon a supervisory official. See *Bayer v. Monroe County Children and Youth Services*, 577 F.3d 186, 190 n.5 (3d Cir. 2009).

9. It is evident that the claims against Phelps are based solely on the theory of respondeat superior. Exhibits indicate that plaintiff's complaints were forwarded to Phelps and on one occasion plaintiff wrote to Phelps. Phelps, however, cannot be imputed with personal knowledge and acquiescence in the prior alleged conduct solely by virtue of receiving or reviewing plaintiff's letters. *See Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (not published) (allegations that prison officials and administrators responded inappropriately to inmate's later-filed grievances do not establish the involvement of those officials and administrators in the underlying deprivation); *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (granting summary judgment to nonmedical prison officials whose involvement with prisoner's healthcare was limited to failing to respond to prisoner's letters explaining his predicament); *Davila-Bajana v. Sherman*, 278 F. App'x 91, 93-94 (3d Cir. 2008) (not published); *see also Cole v. Sobina*, Civ. No. 04-99J, 2007 WL 4460617 (W.D. Pa. Dec. 19, 2007); *Ramos v. Pennsylvania Dep't of Corr.*, Civ. No. 06-1444, 2006 WL 2129148 (M.D. Pa. July, 27, 2006); *Jefferson v. Wolfe*, Civ. No. 04-44 ERIE, 2006 WL 1947721 (W.D. Pa. July, 11, 2006). The claims against Phelps are nothing more than allegations of supervisor liability, which are not cognizable in a § 1983 action. *See Rizzo v. Goode*, 423 U.S. at 376; *Davila-Bajana*, 278 F. App'x at 93-94. The claims lack an arguable basis in law or in fact and are dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

10. **Due Process**. The allegations in the complaint fail to allege violations of plaintiff's right to due process. Plaintiff received several disciplinary reports in 2008 and

2009 and, in each case, he was found guilty. In grievances attached to the complaint, plaintiff complains that he was: (1) wrongfully found guilty of testing positive for drugs due to medication he was taking; (2) not allowed to confront his accusers, and (3) not allowed to call witnesses. (*Id.* at exs. B3, B5, B7, C2, F2) The complaint indicates that plaintiff was housed in SHU for one year. It is clear from two exhibits that on two separate occasions plaintiff received discipline consisting of ten and fifteen days confinement to his quarters. The record does not reflect his punishment for the other findings of guilt. Plaintiff appealed the decisions, but his appeals were denied.

11. Plaintiff's claim that he was denied due process lacks legal merit. It is axiomatic that to be entitled to procedural due process protections as set forth in *Wolff v. McDonnell*, a prisoner must be deprived of a liberty interest.[6] *Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974). "Discipline by prison officials in response to a wide range

---

[6]While prisoners retain certain basic constitutional rights, including procedural due process protections, prison disciplinary hearings are not part of a criminal prosecution, and an inmate's rights at such hearings may be curtailed by the demands and realities of the prison environment. *See Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974); *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991). A prison disciplinary hearing satisfies the Due Process Clause if the inmate is provided with: (1) written notice of the charges and not less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 at 563-71; *Griffin v. Spratt*, 969 F.2d 16, 19-20 (3d Cir. 1992). Hence, inmates do not have an absolute constitutionally-protected right to confront and cross-examine witnesses at their prison disciplinary hearings. *See Wolff* at 567-68. Further, a right to appeal disciplinary convictions is not within the narrow set of due process rights delineated in *Wolff*. *See Bruton v. Denny*, Civ. No. 06-744-SLR, 2007 WL 1576341, at *3 (D. Del. May 30, 2007); *Counterman v. Fauver*, Civ. No. 83-4839, 1989 WL 200954 (D.N.J. Nov. 24, 1989); *Garfield v. Davis*, 566 F. Supp. 1069, 1074 (E.D. Pa. 1983); *Greer v. DeRobertis*, 568 F. Supp. 1370 (N.D. Ill. 1983).

of misconduct falls within the expected parameters of the sentence imposed." *Sandin v. Conner*, 515 U.S. 472 (1995). Prison disciplinary segregation will implicate a protectable liberty interest only if it dramatically departs, in length of time or otherwise, from basic prison conditions. *See, e.g., Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (seven months in disciplinary segregation is insufficient to trigger a due process violation); *Griffin v. Vaughn*, 112 F.3d 703, 706-08 (3d Cir. 1997) (fifteen months in administrative custody is insufficient to trigger a due process violation).

12. The discipline meted to plaintiff did not result in an atypical or significant deprivation that would give rise to a liberty interest under *Sandin*. Hence, plaintiff's inability to face his accusers or to call witnesses, as well as any other alleged procedural defects, lacks legal significance in the absence of any protectable interest. *See Sandin*, 515 U.S. at 487; *see also Williams v. Bitner*, 307 F. App'x 609 (3d Cir. 2009) (not published). Based upon the relatively short duration of punishment (i.e., one year for apparently multiple violations on multiple dates), plaintiff lacks the requisite liberty interest to implicate a due process violation. As plaintiff has not articulated a protected liberty interest, the court dismisses the due process claims as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

13. **Request for Counsel**. Plaintiff requests counsel on the grounds that he does not have the ability to present his case; he is unskilled in the law and the issues are complex; the case may turn on credibility determinations; expert witnesses will be necessary; he cannot afford counsel; and counsel would serve the "best interests of justice" in this case. (D.I. 4) Although a plaintiff does not have a constitutional or

statutory right to an attorney,[7] a district court may seek legal representation by counsel for a plaintiff who demonstrates "special circumstances indicating the likelihood of substantial prejudice to [the plaintiff] resulting . . . from [the plaintiff's] probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case." *Tabron v. Grace*, 6 F.3d 147, 154 (3d Cir. 1993)(citing *Smith-Bey v. Petsock*, 741 F.2d 22, 26 (3d Cir. 1984)).

14. Factors to be considered by a court in deciding whether to request a lawyer to represent an indigent plaintiff include: (1) the merits of the plaintiff's claim; (2) the plaintiff's ability to present his or her case considering his or her education, literacy, experience, and the restraints placed upon him or her by incarceration; (3) the complexity of the legal issues; (4) the degree to which factual investigation is required and the plaintiff's ability to pursue such investigation; (5) the plaintiff's capacity to retain counsel on his or her own behalf; and (5) the degree to which the case turns on credibility determinations or expert testimony. *Montgomery v. Pinchak*, 294 F.3d 492, 498-99 (3d Cir. 2002); *Tabron*, 6 F.3d at 155-56.

15. Plaintiff's filings demonstrate his ability to articulate his claims and represent himself. Additionally, the case is so not factually or legally complex that an attorney to represent plaintiff is warranted. Finally, this case is in its early stages, defendants have yet to be served and, should the need for counsel arise later, one can be appointed at

---

[7] *See Mallard v. United States Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989) (Section 1915(d) (now § 1915(e)(1)) does not authorize a federal court to require an unwilling attorney to represent an indigent civil litigant, the operative word in the statute being "request." *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993) (no right to counsel in a civil suit).

that time. Thus, in these circumstances, the court will deny without prejudice plaintiff's request for counsel. (D.I. 4)

16. **Injunctive Relief.** On March 11, 2010, plaintiff filed a letter/motion for injunctive relief stating that he has a weak left leg. He alleges that, following his complaints of feeling threatened by a correctional officer, defendants confiscated his medically necessary cane, moved him a further distance from the "chowhall," and assigned him a top bunk with no ladder. (D.I. 11) Plaintiff was recently transferred to the medium security housing unit ("MHU"). On April 5 and 7, 2010, plaintiff filed letters/motions for a transfer to the Howard R. Young Correctional Institution ("HRYCI"), Wilmington, Delaware, because it is close enough for his family to check on him. (D.I. 15, 16) The court construes the letters as motion for injunctive relief.

17. **Standard.** A preliminary injunction is "an extraordinary remedy that should be granted only if (1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest." *NutraSweet Co. v. Vit-Mar Enterprises, Inc.*, 176 F.3d 151, 153 (3d Cir. 1999) ("*NutraSweet II*"). The elements also apply to temporary restraining orders. *See NutriSweet Co. v. Vit-Mar Enterprises., Inc.*, 112 F.3d 689, 693 (3d Cir. 1997) ("*NutraSweet I*") (a temporary restraining order continued beyond the time permissible under Rule 65 must be treated as a preliminary injunction, and must conform to the standards applicable to preliminary injunctions). "[F]ailure to establish any element in [a plaintiff's] favor renders a preliminary injunction inappropriate." *NutraSweet II*, 176 F.3d

at 153. Furthermore, because of the intractable problems of prison administration, a request for injunctive relief in the prison context must be viewed with considerable caution. *Rush v. Correctional Med. Services, Inc.*, 287 F. App'x 142, 144 (3d Cir. 2008) (not published) (citing *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995)).

18. **Discussion**. In defendant Phelps' opposition to plaintiff's first motion for injunctive relief (D.I. 10), he argues that plaintiff is not entitled to injunctive relief and provides evidence to support his position.[8] (D.I. 17) The declaration of Dawn Tingle ("Tingle") states that she did not threaten plaintiff as he alleges. However after plaintiff behaved inappropriately on March 4, 2010, Tingle authored an incident report for several rule infractions. Tingle states that plaintiff is no longer housed in the unit where she is assigned. (*Id.* at ex. A) Following the March 4th occurrence, plaintiff was given the option of a transfer to protective custody, but he refused to sign the required form. (*Id.* at ex. D)

19. The affidavit of Christopher Klein ("Klein") states that, on the day in question, plaintiff, with cane in hand, approached a correctional officer in a threatening manner.[9] A few days later, Klein telephone the medical department and was informed of the expiration of the medical memo that authorized plaintiff's ownership of the cane. Klein ordered the retrieval of the cane. On March 10, 2010, medical reviewed plaintiff's chart and determined that there was no evidence for the use of a cane. (*Id.* at ex. C) Since

---

[8] Defendants incorrectly state that Phelps is a non-party to this action. To the contrary, he is a named defendant. (*See* D.I. 2, ¶ III)

[9] Plaintiff was provided a cane by medical and it was approved by Deputy Warden Pierce in February 2008. (*Id.* at ex. B, ¶ 2)

-11-

Case 1:09-cv-01004-SLR Document 18 Filed 05/03/10 Page 12 of 15 PageID #: 123

the cane's removal, on several occasions plaintiff has been seen "power walking" during recreation without the use of an aid. Currently, plaintiff's cell is located approximately one hundred yards from the chow hall and he is assigned a bottom bunk. (*Id.* at ex. B)

20. With regard to the retaliation/cane removal issue, the court concludes that plaintiff has not demonstrated the likelihood of success on the merits. The record reflects that Tingle took the action as a result of plaintiff's failure to comply with prison rules. While plaintiff's cane was removed a short time after the March 4th occurrence, the record reflects that the cane is no longer medically necessary. Indeed, plaintiff has been seen "power walking." Finally, plaintiff is no longer housed in the same unit as Tingle. Notably, when he was, he was given an opportunity to transfer to protective custody, but refused.

21. With regard to the transfer to the HYRCI, after reviewing the allegations, the court concludes that plaintiff has not demonstrated the likelihood of success on the merits. To the extent that plaintiff's claims are based upon his security classification, in Delaware, inmates have no constitutionally protected interest in their classification. *Riley v Snyder*, 72 F. Supp. 2d 456, 460 (D. Del. 1999); *Carrigan v. State of Delaware*, 957 F. Supp. 1376, 1385 (D. Del. 1997). Additionally, the Delaware Supreme Court has recognized that prison officials have discretion to house inmates at the facilities they choose. *Walls v. Taylor*, 856 A.2d 1067, 2004 WL 906550 (Del. 2004) (table) (citing *Brathwaite v. State*, No. 169, 2003 (Del. Dec. 29, 2003). Furthermore, the United States Supreme Court has held that an inmate has no due process right to be incarcerated in a particular institution whether it be inside the state of conviction, or

-12-

outside that state. *Olim v. Wakinekona,* 461 U.S. 238, 251(1983). Plaintiff's request goes directly to the manner in which the Delaware Department of Correction operates its prison, and an injunction would substantially harm the prison administration. See *Carrigan,* 957 F. Supp. at 1385. Granting injunctive relief is in contravention of the public's interest in the effective and orderly operation of its prison system. *Id.* For these reasons, the court denies plaintiff's letters/motions for injunctive relief. (D.I. 10, 15, 16)

22. **Conclusion.** For the above reasons, the claims against Phelps are **dismissed** as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). He is dismissed as a defendant. Plaintiff **may proceed** with the excessive force and retaliation claims against Bryan and Hannum. Plaintiff's request for counsel is **denied** without prejudice. (D.I. 4) Plaintiff's motions for injunctive relief are **denied**. (D.I. 10, 15, 16)

IT IS FURTHER ORDERED that:

1. The Clerk of Court shall cause a copy of this order to be mailed to plaintiff.

2. Pursuant to Fed. R. Civ. P. 4(c)(3) and (d)(1), plaintiff shall complete and return to the Clerk of Court an **original** "U.S. Marshal-285" form for **remaining defendants Michael Bryan and Raymond Hannum**, as well as for the Attorney General of the State of Delaware, 820 N. FRENCH STREET, WILMINGTON, DELAWARE, 19801, pursuant to DEL. CODE ANN. tit. 10 § 3103(c). Plaintiff has provided the court with copies of the complaint for service upon the remaining defendants. Plaintiff is notified that the United States Marshal Service ("USMS") will not

serve the complaint until all "U.S. Marshal 285" forms have been received by the Clerk of Court. Failure to provide the "U.S. Marshal 285" forms for each remaining defendant and the attorney general within 120 days of this order may result in the complaint being dismissed or defendants being dismissed pursuant to Federal Rule of Civil Procedure 4(m).

3. Upon receipt of the form(s) required by paragraph 2 above, the USMS shall forthwith serve a copy of the complaint, this order, a "Notice of Lawsuit" form, the filing fee order(s), and a "Return of Waiver" form upon each of the defendants so identified in each 285 form.

4. A defendant to whom copies of the complaint, this order, the "Notice of Lawsuit" form, and the "Return of Waiver" form have been sent, pursuant to Fed. R. Civ. P. 4(d)(1), has thirty days from the date of mailing to return the executed waiver form. Such a defendant then has sixty days from the date of mailing to file its response to the complaint, pursuant to Fed. R. Civ. P. 4(d)(3). A defendant residing outside this jurisdiction has an additional thirty days to return the waiver form and to respond to the complaint.

5. A defendant who does not timely file the waiver form shall be personally served and shall bear the costs related to such service, absent good cause shown, pursuant to Fed. R. Civ. P. 4(d)(2). **A separate service order will issue in the event a defendant does not timely waive service of process.**

6. No communication, including pleadings, briefs, statement of position, etc., will be considered by the court in this civil action unless the documents reflect proof of service upon the parties or their counsel.

7. **NOTE:** \*\*\* When an amended complaint is filed prior to service, the court will **VACATE** all previous service orders entered, and service **will not take place**. An amended complaint filed prior to service shall be subject to re-screening pursuant to 28 U.S.C. §1915(e)(2) and § 1915A(a). \*\*\*

8. **Note:** \*\*\* Discovery motions and motions for appointment of counsel filed prior to service will be dismissed without prejudice, with leave to refile following service. \*\*\*

_____
UNITED STATES DISTRICT JUDGE