IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHARLES THOMAS MONROE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civ. No. 09-1004-SLR ) |
| MICHAEL BRYAN, | ) ) ) |
| Defendant. | ) |

Charles Thomas Monroe. James T. Vaughn Correctional Center, Smyrna, Delaware. Pro se Plaintiff.

Ryan Patrick Connell, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendant.

**MEMORANDUM OPINION**

Dated: August 8, 2012
Wilmington, Delaware

[signature] 
ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Charles Thomas Monroe ("plaintiff"), an inmate at the James T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983 on December 29, 2009 alleging violations of his constitutional rights. (D.I. 2) He proceeds pro se and has been granted leave to proceed in forma pauperis. Presently before the court are cross-motions for summary judgment, and plaintiff's request for counsel. (D.I. 76, 86, 95, 99) The court has jurisdiction pursuant to 28 U.S.C. § 1331. For the following reasons, the court will deny plaintiff's motion for summary judgment; will grant defendants' motion for summary judgment; and will deny without prejudice plaintiff's request for counsel.

## II. PROCEDURAL AND FACTUAL BACKGROUND

The claims against defendants Warden Perry Phelps ("Phelps") and Correctional Officer Raymond Hannum ("Hannum") have been dismissed. (See D.I. 18, 51) The remaining claims as asserted in the complaint are as follows: On January 7, 2008 defendant Michael Bryan ("defendant") came up behind plaintiff, grabbed him in a choke hold, and slammed him to the floor, injuring plaintiffs back and neck. (D.I. 2 at 3, ¶ 2) Defendant never called any security codes prior to the attack. (Id.) Additionally, plaintiff alleges that defendant fabricated several disciplinary reports against him in an attempt to either justify his actions or retaliate against plaintiff for threatening to seek legal recourse. (Id.)

In an incident report prepared by defendant, he described seeing plaintiff on January 7, 2008. At the time, plaintiff was housed in the V building which mainly

houses inmates in drug treatment programs. Defendant saw plaintiff make contact with another inmate and saw the inmate hand plaintiff a small, white object. Plaintiff took the object and went into a telephone booth. Defendant approached plaintiff and asked him for the object that he had received from the inmate. Plaintiff states that he received a small, folded-up piece of paper, about the size of an index card, from an inmate. According to plaintiff, defendant snuck up on him. According to defendant, plaintiff stated that he did not have anything, but defendant thought he could see the object in plaintiff's hand. Defendant told plaintiff to "hand over" the object. According to defendant, plaintiff put the object in his mouth and began to chew. Defendant thought that the item might be drugs so he placed plaintiff in a choke hold and order him to spit out what was in his mouth. Plaintiff describes the same movement by defendant, but denies placing an object in his mouth. (D.I. 76, exs. A-1; D.I. 87, pl.'s dep. 4, 5, 8-10, 13)

Correctional officer Sandra Werda ("Werda") reported that she heard defendant order plaintiff to "spit it out." According to Werda, plaintiff resisted and defendant took plaintiff to the floor on his knees. According to plaintiff, he heard something along the lines of "give me" and the next thing he knew, defendant had slammed him onto the floor facedown. According to defendant and Werda, plaintiff then complied and spit out a white piece of paper. According to plaintiff, he had the paper in his hand, and let it drop to the floor. Plaintiff testified that the incident popped his back and neck. (D.I. 76, exs. A-1, B-1; D.I. 87, pl.'s dep. 10, 11, 13)

Plaintiff was handcuffed after he was on the floor. Both defendant and Werda report that they handcuffed plaintiff. Hannum heard defendant call his name and when

he arrived, plaintiff was on the floor and cuffed. Werda and Hannum assisted defendant in restraining plaintiff, and Hannum helped plaintiff to his feet. The lieutenant on duty was notified of the incident, and plaintiff was escorted to the group room by Hannum. While there, plaintiff was sitting in a chair making strange faces and then he rolled onto the floor. Plaintiff states that he lost his balance fell from the chair. Plaintiff, Hannum, correctional officer Strong ("Strong"), and Werda went into the group room to check on plaintiff. (D.I. 76, exs. A-2, B-2, C-1; D.I. 87, pl.'s dep. 14-15)

Plaintiff was taken by wheelchair to the infirmary. There, he was seen by nurse Bob Davenport ("Davenport") who examined him and gave him Tylenol 3 after speaking to the physician on call. Medical notes for January 7, 2008, indicate that plaintiff reported lower back pain stating, "it's taken me year to back from a gunshot injury in 1996, now I'm hurt." The note indicates that plaintiff had complaints of back pain as early as July 2006.[1] Plaintiff was referred for follow-up and told to take warm showers, to keep moving when possible, and he was provided with an analgesic balm. (D.I. 76, ex. A-3; D.I. 87 pl's dep. 15, 16; D.I. 88, ex. C)

A few days later, on January 10, 2008, plaintiff fell out of his top bunk. He was seen by medical the same day and given crutches. An x-ray of the left hip, taken on January 11, 2008, was normal. On January 17, 2008, plaintiff was given a back brace and knee brace to support his knee and back. On the same date, medical requested plaintiff be given a bottom bunk assignment. The braces and bottom bunk assignment

---

[1]Medical records indicate that plaintiff complained of continued pain, cramping, and arthritic-type problems with his back, legs and feet on February 29, 2007, approximately one year prior to the incident in question, and on December 10, 2007, approximately one month prior to the January 2008 incident. (D.I. 72)

3

were for a three-month period. On February 12, 2008, medical ordered a cane for plaintiff, noting that he needed a cane instead of crutches. The request indicates the end date for use of the cane is "indefinite," and plaintiff used a cane for almost two years. (D.I. 72 at 621, 678, 688-692; D.I. 87 pl.'s dep. 16, 17, 23)

When plaintiff was seen by medical on May 7, 2008, he complained that his lower back pain had worsened since January 2008 when he was wrestled to the ground by correctional officers. A May 30, 2008 x-ray of plaintiff's lumbar spine found normal soft tissues, minimal scoliosis, and no evidence of fracture. Medical records indicate that plaintiff continued to complain of back pain through 2008 and that he was prescribed Tylenol throughout 2008. (D.I. 72 at 677, 694, 710-752; D.I. 88, exs. C, D)

As a result of the January 7, 2008 incident, plaintiff was charged with disorderly or threatening behavior, giving a false alarm, abuse of privileges, failing to obey an order, lying, off limits, and possession of non-dangerous contraband. Plaintiff was found guilty of the infractions. (D.I. 2, ex. C)

Medical records produced by defendants include mental health records that indicate that plaintiff receives continuing mental health treatment. (*See* D.I. 59, 72) Therefore, the court first addresses whether plaintiff is competent within the meaning of Fed. R. Civ. P. 17(c) and considers his request for counsel. (*See* D.I. 95)

## III. RULE 17(c)

### A. Legal Standard

The district court has a responsibility to inquire sua sponte, under Fed. R. Civ. P. 17(c)(2), whether a pro se litigant is incompetent to litigate his action. *Powell v. Symons*, 680 F.3d 301, 303, 307 (3d Cir. 2012). Rule 17(c)(2) provides that "[t]he court

4

must appoint a guardian ad litem - or issue another appropriate order - to protect a minor or incompetent person who is unrepresented in an action."

Rule 17(c) applies "[i]f a court [is] presented with evidence from an appropriate court of record or a relevant public agency indicating that the party had been adjudicated incompetent, or if the court receive[s] verifiable evidence from a mental health professional demonstrating that the party is being or has been treated for mental illness of the type that would render him or her legally incompetent." *Powell*, 680 F.3d at 307 (3d Cir. 2012) (citing *Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 201 (2d Cir. 2003)). The court "need not inquire sua sponte into a pro se plaintiff's mental competence based on a litigant's bizarre behavior alone, even if such behavior may suggest mental incapacity" but, "if there has been a legal adjudication of incompetence . . . that is brought to the court's attention, the Rule's provision is brought into play." *Id.* (citations omitted). The decision whether to appoint a next friend or guardian ad litem rests with the sound discretion of the district court. *Powell*, 680 F.3d at 303.

### B. Discussion

The record reflects that plaintiff has a mental health history. As mandated by the Third Circuit, the court inquires into plaintiff's competency pursuant to Rule 17(c). Neither plaintiff nor defendants question plaintiff's competency.

At one time, plaintiff was diagnosed as paranoid schizophrenic - stable.[2] (D.I. 72 at 599) As of April 2011, plaintiff was diagnosed with a generalized anxiety disorder and a paranoid personality disorder. (D.I. 59 at 143) The most recent mental health

---

[2]In the past, at least one physician opined that he did not think plaintiff had the mental disorder. (D.I. 72 at 610)

5

status examination that is contained in the record is dated April 18, 2011, and it contains normal findings. (D.I. 59 at 137) The mental health record appears to establish that plaintiff responds well to treatment. (D.I. 59, 72) While there is evidence that plaintiff is being treated for mental illness, there is no medical opinion in the record that he incompetent. Nor is there is evidence that plaintiff has been adjudicated incompetent by any court. Moreover, in reviewing plaintiff's pleadings, it is apparent that he understands the nature of the action he has commenced. He has responded appropriately to orders entered by the court and his filings are coherent and logical.

The court has considered the medical evidence of record in conjunction with its own experience with plaintiff. It finds that, under the circumstances, the evidence does not suffice to conclude that plaintiff is incompetent. Inasmuch as there is no substantial question regarding the competence of plaintiff, it is not necessary to conduct a Rule 17(c) competency hearing. For the above reasons, the court finds plaintiff is currently competent and declines to appoint a guardian or counsel to represent his interests.

## IV. REQUEST FOR COUNSEL

Plaintiff requests counsel but provides no reasons why counsel is necessary. (D.I. 95) A pro se litigant proceeding in forma pauperis has no constitutional or statutory right to representation by counsel.[3] See *Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). However, representation

---

[3]See *Mallard v. United States Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989) (§ 1915(d) (now § 1915(e)(1)) does not authorize a federal court to require an unwilling attorney to represent an indigent civil litigant, the operative word in the statute being "request.").

6

by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law. *Tabron*, 6 F.3d at 155.

After passing this threshold inquiry, the court should consider a number of factors when assessing a request for counsel, including:

> (1) the plaintiff's ability to present his or her own case;
> (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation; (4) the plaintiff's capacity to retain counsel on his own behalf; (5) the extent to which a case is likely to turn on credibility determinations; and
> (6) whether the case will require testimony from expert witnesses.

*See Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002); *Tabron*, 6 F.3d at 155-57. The list is not exhaustive, nor is any one factor determinative. *Tabron*, 6 F.3d at 157.

The court finds that plaintiff's claims have merit given that some issues survived initial screening. Therefore, the court proceeds to weigh the above factors to determine if appointed counsel is warranted. The first factor for consideration is plaintiff's ability to present his own case. In making this determination, the court considers his literacy, education, prior work experience, prior litigation experience, and restraints placed upon him by virtue of his incarceration. *Tabron*, 6 F.3d at 156. As discussed above, plaintiff's submissions demonstrate he is able to adequately present his case. He sets forth issues and states the factual grounds on which he seeks relief. Although not an attorney, plaintiff's lack of legal training is common for pro se litigants.

The court next considers the complexity of the legal issues presented. Representation by counsel may be appropriate when the legal issues are complex. Here, plaintiff alleges excessive force and retaliation. After reviewing the record, the

7

court does not find that the legal issues raised by plaintiff claims are unduly complex or burdensome.

Next, the court considers the degree to which factual investigation will be necessary, and the ability of the plaintiff to pursue such investigation. Even where the ultimate legal issue in a case may be comprehensible, a court must consider the complexity of the discovery involved. *Parham v. Johnson*, 126 F.3d 454, 459 (3d Cir. 1997). Where claims are likely to require extensive discovery and compliance with complex discovery rules, representation by counsel may be warranted. *Tabron*, 6 F.3d at 156. Also, the court considers the extent to which plaintiff, while in confinement, may face problems in pursuing his claims. *Id.* at 156. The record reflects that discovery has been produced to plaintiff.

The court considers plaintiff's financial ability to attain and afford counsel on his own behalf. Plaintiff has been granted leave to proceed in forma pauperis and, therefore, has demonstrated an inability to afford counsel. If a case will be "solely a swearing contest" and will rely heavily on credibility determinations, this should weigh in favor of representation. *Parham*, 126 F.3d at 460; *see Woodham v. Sayre Borough Police Dep't*, 191 F. App'x 111, 116 (3d Cir. 2006 (not published). The record before the court does not indicate that the case will be "solely a swearing contest." Indeed, for the most part, the parties agree upon the facts. Hence this factor does not support representation by counsel. Finally, the court considers the extent to which expert testimony may be required. Appointed counsel may be warranted where the case will require testimony from expert witnesses. After reviewing the pleadings, the court concludes that expert testimony will not be required.

The court concludes that the above factors do not weigh in favor of representation by counsel. As discussed above, the case is not so factually or legally complex that requesting an attorney is warranted. To date, the filings in this case demonstrate plaintiff's ability to articulate his claims and represent himself. In these circumstances, the court will deny without prejudice plaintiff's request for counsel. (D.I. 95)

## V. MOTIONS FOR SUMMARY JUDGMENT

### A. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no genuine issue of material fact exists. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Federal Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587

---

[4] Rule 56 was revised by amendment effective December 1, 2010. "The standard for granting summary judgment remains unchanged," and "[t]he amendments will not affect continuing development of the decisional law construing and applying these phrases." Fed. R. Civ. P. 56 advisory committee's note to 2010 Amendments.

(quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The rules are no different when there are cross-motions for summary judgment. *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008).

Plaintiff moves for summary judgment on the grounds that: (1) contradictions in the record make it clear that prison officials tried to cover up the fact that defendant used excessive force; (2) no jury can conclude that the defense witnesses are credible; (3) discovery has not been provided regarding defendant's past conduct;[5] (4) defendant has not provided a complete copy of plaintiff's medical records;[6] and (5) with regard to the retaliation claim, if given a fair chance, plaintiff can prove that he is not guilty of the allegations defendant made on January 7, 2008. (D.I. 76, 99) Defendant moves for

---

[5]Typically, claims of awareness of a pattern or practice of unconstitutional abuse are raised against prison administrators or officials. *See In re Bayside Prison Litigation*, 157 F. App'x 545 (3d Cir. 2005) (not published).

[6]The record reflects that defendant produced medical records to plaintiff in July, September, and October 2011. (D.I. 58, 59, 71, 72, 81, 82)

10

summary judgment on the grounds that: (1) his actions did not constitute force in violation of the Eighth Amendment; (2) he is entitled to qualified immunity; (3) he is immune from suit to the extent that he is named as a defendant in his official capacity; and (4) there is no evidence of retaliation. (D.I. 87, 100)

## B. Discussion

### 1. Excessive force

The Eighth Amendment protects inmates against cruel and unusual punishment, but it does not protect an inmate against minimal use of force. *Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)) ("Not every push or shove, even if it may later seem unnecessary . . . violates a prisoner's constitutional rights"). The core judicial inquiry when a prisoner alleges that prison officers used excessive force against the prisoner is not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *See Wilkins v. Gaddy*, __U.S.__, 130 S.Ct. 1175 (2010).

Prison guards who maliciously and sadistically use force against an inmate violate "contemporary standards of decency even if the resulting injuries are not significant." *Smith v. Mensinger*, 293 F.3d at 647. In determining whether a correctional officer has used excessive force in violation of the Eighth Amendment, courts look to several factors including: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of

11

the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of the forceful response. *Smith*, 293 F.3d at 649 (citations omitted). In an Eighth Amendment excessive force claim, summary judgment in favor of a defendant is appropriate where the evidence, viewed in the light most favorable to the plaintiff, does not support "a reliable inference of wantonness in the infliction of pain." *Thomas v. Ferguson.* 361 F. Supp. 2d 435, 438 (D.N.J. 2004) (quoting *Whitley v. Albers*, 475 U.S. 312, 322 (1986)).

Plaintiff argues that the written reports of defendant, Werda, and Hannum give three completely different versions of the January 7, 2008 incident. He points out that all three reports state that he was not sent to the medical unit, but that defendant's report, nonetheless, indicates that plaintiff was seen by the nurse. Plaintiff asks: (1) why was it necessary to take him to his knees or on the floor if he complied and spit out the paper; (2) why was he handcuffed after he complied; and (3) why C/O Strong, who was present, did not prepare a report. Plaintiff concludes that the reports "make it clear" that defendant, Werda, and Hannum tried to cover up defendant's use of force. Defendant argues that he has a reasonable explanation why it was necessary to apply force. He further argues that the evidence of record demonstrates there was no use of excessive force or that plaintiff suffered an injury as a result of the incident.

After reviewing the evidence, the court concludes that no reasonable finder of fact could determine that defendant acted maliciously or sadistically to cause harm to plaintiff. Contrary to plaintiff's position, the reports prepared by the correctional officers do not provide differing versions of the events of January 7, 2008. Defendant saw

12

plaintiff take something from another inmate. Plaintiff acknowledges that an inmate handed him a folded piece of paper. Both parties agree that defendant ordered plaintiff to hand him the object. According to both plaintiff and defendant, plaintiff did not give defendant the paper until after defendant took the measures he did.[7] Plaintiff's initial failure to give defendant the object after a command to do so would have been sufficient to warrant some use of force by defendant. Hence, there was justification for the use of some force. Moreover, plaintiff's main complaint was back pain, a complaint he has had for many years prior to the incident.[8] Finally, the record reflects that the amount of force used was reasonable under the circumstances, and the force used is not the type upon which a reasonable inference of malice and intent to cause pain could be based.

For the above reasons, the court will grant defendant's motion for summary judgment on the issue of excessive force and will deny plaintiff's motion for summary judgment on the same issue.

### 2. Eleventh Amendment

Defendant moves for summary judgment on all claims raised against him in his official capacity. Plaintiff did not respond to this issue.

---

[7] The parties dispute the method used by plaintiff to give defendant the paper. Defendant's position is that plaintiff had placed the paper in his mouth and spit it out. Plaintiff's position is that the paper was in his hand and he let it drop to the floor. These differences are not material ones.

[8] Plaintiff received medical treatment immediately following the incident. He presented with low back pain, was prescribed medication and scheduled for a follow-up. Three days later, plaintiff fell from his bunk and injured himself. Regardless, a May 30, 2008 lumbar x-ray revealed normal soft tissues, minimal scoliosis, and no evidence of fracture.

The Eleventh Amendment of the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court by one of its own citizens, regardless of the relief sought. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Edelman v. Jordan*, 415 U.S. 651 (1974). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citations omitted); *Ali v Howard*, 353 F. App'x 667, 672 (3d Cir. 2009) (not published). Accordingly, § 1983 claims for monetary damages against a state, state agency, or a state official in his official capacity are barred by the Eleventh Amendment. *See id.*

Defendant is immune from suit for damages in his official capacity. Therefore, the court will grant defendant's motion for summary judgment to the extent that plaintiff seeks monetary damages from him in his official capacity.

### 3. Retaliation

According to plaintiff, his retaliation claim rests upon the fact that, if given a fair chance, he can prove that he is not guilty of the allegations made by defendant on January 7, 2008. Plaintiff contends that defendant fabricated the allegations in retaliation for plaintiff's seeking legal recourse as a result of the assault. Plaintiff provides no evidence to support the retaliation claim. Defendant moves for summary judgment on the basis that plaintiff failed to demonstrate the elements necessary to support a retaliation claim.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990). It has long been established that the First Amendment bars retaliation for protected speech. *See Crawford-El v. Britton*, 523 U.S. 574, 592 (1998); *Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981). Proof of a retaliation claim requires that plaintiff demonstrate: (1) he engaged in protected activity; (2) he was subjected to adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take adverse action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (quoting *Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)); *see also Allah v. Seiverling*, 229 F.3d 220 (3d Cir. 2000) (a fact finder could conclude that retaliatory placement in administrative confinement would "deter a person of ordinary firmness from exercising his First Amendment rights" (citations omitted)). "[O]nce a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Id.* at 334.

The court first considers whether plaintiff engaged in constitutionally protected activity. Under the First and Fourteenth Amendments, prisoners have the right to petition the government for redress of grievances and to freely access the courts. *Milhouse v. Carlson*, 652 F.2d at 373-374. A prisoner's exercise of his First Amendment freedoms may be curtailed if his speech poses "the likelihood of disruption to prison order or stability, or otherwise interferes with the legitimate penological

15

objectives of the prison environment. *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 132 (1977). A threat is distinguished from constitutionally protected speech. *Watts v. United States*, 394 U.S. 705, 707 (1969).

Plaintiff asserts the protected activity occurred when he indicated that he would seek legal recourse against defendant for assault. Other than plaintiff's bald assertions, the record does not indicate whether or when plaintiff indicated to defendant that he would seek legal action.

Nonetheless, assuming for purposes of this proceeding that plaintiff has made a showing sufficient to demonstrate that he engaged in constitutionally protected activity, the record does not support a finding that he was subject to adverse actions of the type that would deter a prisoner of ordinary firmness from exercising his constitutional rights. More specifically, following the January 7, 2008 incident report authored by defendant and the resulting charges, plaintiff took the following actions with regard to the incident: (1) submitted a grievance dated January 9, 2008; (2) wrote to Richard E. Seifert, Deputy Bureau Chief on June 19, 2008, (3) submitted a grievance on March 3, 2008 complaining of the hearing on the disciplinary charges that resulted from the January 7th incident; (4) wrote to Bureau Chief Rick Kearney on February 13, 2008; (5) on March 17, 2008 asked Internal Affairs to conduct an investigation; and (6) filed the instant complaint on December 29, 2009. (*See* D.I. 2 exs. A-1, A-2, A-3, C-2, G-1, G-2, I-1, I-2, I-3) In addition, plaintiff has continued to write to prison officials and submit grievances regarding a host of issues. (*See* D.I. 2, exs.); *see Heller v. Keenhold*, 2006 WL 759647 (M.D. Pa. Mar. 24, 2006) (the filing of multiple grievances failed to demonstrate that plaintiff's housing deterred him from exercising his constitutional rights).

16

Finally, again assuming arguendo that plaintiff engaged in protected activity, there is no evidence of record that defendant would not have made the same decision, absent the protected conduct, to prepare the incident report and charge plaintiff with violations of prison regulations following the January 7th incident.

Based upon the foregoing, no reasonable jury could find in favor of plaintiff. Accordingly, the court will grant defendant's motion for summary judgment as to the retaliation issue and will deny plaintiff's motion for summary judgment on the same issue.

## VI. CONCLUSION

For the above reasons, the court finds plaintiff competent, will deny without prejudice plaintiff's request for counsel, will deny plaintiff's motions for summary judgment, and will grant defendants' motion for summary judgment.[9]

An appropriate order will issue.

---

[9] The court will not address the issue of qualified immunity inasmuch as there has been no violation of plaintiff's constitutional rights.